Alright, our next case is Evans v. Kirk and for the appellate Mr. Meyer and for the athlete Mr. Wilcox. Mr. Meyer, I understand you had some problems with the vehicle on the way? I did. It was a unique experience. Never quite had it. And it was low mileage car under warranty? 6,000 miles. And you're an expert now on warranties, right? Well, I thought I was before, but I'm going to even touch up on it a little bit more. Good afternoon. May it please the court. Mr. Wilcox, my name is Chris Meyer and as you know I represent Dennis and Shelley Evans in this matter. Your honors, this case involves a three count complaint. We had a one and a half day trial. The complaint was based in count one for a breach of contract based upon specifically paragraph two of the construction agreement. Count two was based on a breach of an express warranty which was laid out in section 11 of the contract. And count three was based upon the implied warranty of professional and workmanlike conduct or reasonable workmanship. In any event, at the trial level, Judge Gurdon, after a day and a half trial and also after having both counsels submit written closing arguments, sent us an order dated May 11, 2011. And in that order, the very first thing he did was dismiss counts one and three without ever being asked to do so by opposing counsel. His rationale for dismissing counts one and three is because, in his opinion, count two subsumed the other two. Meaning that since count two was based on an express warranty, that would, A, negate any other promises or undertakings within the contract itself. And secondly, that it negated the implied warranty of reasonable and professional workmanship. Quite frankly, I think he's dead wrong on both counts. I've laid out pretty extensively, I think, in my brief why I think so. I will note that, unfortunately, sometimes I refer to paragraph 11 as paragraph 9, getting my Roman numerals mixed up. But essentially, we are talking about, in count one, section two, the very first paragraph of the agreement, which states that the contractor shall construct the structure in conformance with the plans, specifications, and proposal, and submitted by contractor, and will do so in a professional and workmanlike manner. That is a promise of professional and workmanlike conduct. Judge Girton's reasoning for striking that is because section 11 states that the contractor warrants and guarantees to the owners all workmanship for one year and manufacturer's warranties as implied, with the exception of all concrete work. That imposed two very large problems for our case. First of all, the defects in the garage did not become noticeable. I'm not saying they didn't exist, but they were not noticeable in that first year of construction. And more notably, is that the warranty actually accepts all concrete work. Judge Girton's ruling was that since the warranty section, that being section 11 of the contract, was unambiguous, that that controlled. That's where I think he first missed the boat. I think the point that he was supposed to have considered is whether the contract as a whole is or is not ambiguous. He simply decided that one paragraph of a five-page contract is unambiguous and did not look at any other provisions of the contract in determining whether that paragraph in itself could be read in conjunction with other paragraphs of the contract, and so that the contract could be construed together. Never reached that point. His focus was on this one-line paragraph of a five-page contract. Even in the contract itself, if you look further, and I have cited this in my brief, section 12 of the contract, the second paragraph, it clearly states that any warranties, guarantees, or obligations imposed on the contractor under this particular written contract, and any remedies available to the owners are in addition to and not in substitution of any other such guarantees or other provisions either in the agreement or implied by law. So essentially, if there are other provisions within the contract itself, which provide for a wider scope of professional workmanlike conduct, such as section two of the contract, section 11 and section two cannot be read together if they are deemed to be the same thing. If that were the judge's decision, then he'd have to say, okay, the contract is ambiguous. The other thing to note is that the contract was drafted by the contractor or the defendant in this case. In doing so, any ambiguity is to be construed against the drafter of the contract. In this instance, if we were going to construe it, if we were going to treat this contract as ambiguous because of the differences between section two and section 11, section 11's got to go because it's more restrictive. It excludes concrete work. It limits the time that one can look at the work that was performed. So section two is a general obligation to perform in a professional and workmanlike manner. And if the contract is deemed ambiguous, which under Judge Gertens' ruling it would be, then that section has to apply over section 11. My thought is, however, that those two sections can be read together because there is one thing in that section 11 that is not in section two, which self-imposes upon the contractor a greater burden of workmanship. And that is he's guaranteeing his workmanship for one year. Now, that's a different word than warranty. We didn't choose that word. That was the word chosen by the contractor. And the way that I understand the guarantee, and unfortunately I couldn't find any case law saying one way or the other, but if you're looking at a guarantee of workmanship, you're saying if there's anything wrong with what I've done within a year's time, if the workmanship or anything happens, if there's any defect in that house, I stand behind my work. Those are words used by one of my witnesses in support of our case, which means that I'll come in and I will fix it. I'm responsible. I understand that. So if we look at it that way, then we say the contract is not ambiguous. The two can be read together. And with respect to the one year, there's a guarantee. Now, granted, that takes out the concrete work as it's stated there. But again, that is still covered by the initial promise to perform work in a workmanlike manner. I want to touch on the implied warranty of professional and reasonable workmanship. Out of the clear blue, Judge Girton decides that if there's an express warranty, regardless of any other language, regardless of case law, because as you'll notice, he didn't cite any case law, neither in his order or during discussions that we had regarding my motion for reconsideration, simply decided that if there's an express warranty, then there can't be an implied warranty. It just doesn't make sense. The whole idea behind the progression of the law in home construction work is recognizing the difference between the two entities involved. One being a contractor who builds homes for a living, deals with blueprints, deals with specs. Those are for him to follow, so he does a good job on the house. And then you have a homeowner, or a projected homeowner, who simply wants a house free from defects. There's nothing in the law that says that under those circumstances, an express warranty of limited duration trumps an implied warranty. As a matter of fact, that specific subject was dealt with in one of the cases that I cited in my brief. The name escapes me now. Tassin, I believe. Now that case actually dealt with the implied warranty of habitability, but it made its rationale using the UCC. And the case is cited under the provisions of the UCC as they relate to warranties and sales contracts. And said that undoubtedly the trend is to not cut off an implied warranty simply because an express warranty is in there. And in that case, they decided that since there was, just because there was an express warranty in the Tassin case, which dealt with limited types of work for a limited time, that was not enough to trump the implied warranty of habitability. I'm not claiming that this is an implied warranty of habitability case. I'm saying that the rationale for not excluding the implied warranty exists in this case just in the same way as it does in the implied warranty of habitability case, the Tassin case, and all the sales cases which were cited in the Tassin case. So I think Judge was wrong in dismissing counts one and three. And in doing so, he did not look at any of the evidence relating to the concrete driveway, which was the big ticket item. And quite frankly, I assume that you've all had homes. I've had homes. And when you have a driveway and you look at it the first time, you might see a chip, no big concern. You look three months down the line, you might see a chip someplace else, no big concern. After a year, you start to see a little speckling come up. And then within two years, you look like you've got a gravel driveway. That's the situation that was presented to the Evans when they, after they moved into their house. At some point, after about two years, it got so bad that they had to bring it to the contractor's attention. Nothing was done. And no responsibility was taken. Finally, I'll just use the last couple of seconds that I have to address the judge's findings of fact with respect to the moisture problem. He did deal with those factual issues, but I believe he decided them wrongly and used an inappropriate standard. Nowhere does he actually say there was no breach of warranty. He tried to couch it in terms of, well, was there anything wrong with the windows? If there wasn't anything wrong with the windows, then the moisture problem isn't the contractor's problem. However, as I stated in my brief, although the actual, the problem as it turned out to be solved was not specifically mentioned in the contract, the contractor was aware of the moisture problem from the very beginning of this episode. Any review of the facts will show you that long before this lawsuit was filed, even before the first letter, I believe, from Mr. Evans' first attorney, he was aware of that moisture problem and simply chose not to deal with it. Chose not to try anything in order to get it resolved. That in itself, to me, is wrong. The fact that there was a moisture problem, the plaintiff was on notice that that moisture problem exists, existed, and the contractor knew that, knew it existed, knew it was coming up, was not surprised by the fact that there was testimony at trial, witnesses, expert witnesses were disclosed in a timely manner, there's simply no excuse. He simply decided that it's not my job. It's not my problem. So I have laid out in my original brief what I feel would be the appropriate ruling for your honors in this instance. And essentially it's to reverse Judge Gurdon and with the facts that you have within the record, to simply order the amounts set forth in my brief in favor of the plaintiff. In the alternative, if the court is not comfortable with doing that part, it could be remanded for the sole purpose of the trial court reviewing the record for determination of the appropriate damages. I'd be more than happy to answer any questions. I don't think so. You'll have additional time on rebuttal. I think you're being kind because my tire blew up. Mr. Wilcox. Thank you, Your Honor. Please support Mr. Meyer. My tire didn't blow up, but nevertheless, as Mr. Meyer indicated, I'm Roy Wilcox, as the court knows. I'm here for Mr. Kirk. Essentially the complaint we have here has three counts, but all the allegations in each of the counts are identical. They all relate to workmanship. Workmanship is defined by the contract, the plans, and the specifications. So whether we're talking about implied warranty, express warranty, or breach of the contract, all of the counts involve the same allegation of what occurred. Failure to perform work according to a workmanlike and professional manner, or in that workmanlike and professional manner. I think the evidence shows that Mr. Kirk performed the agreement, the contract, the specifications, except as to the counts which he admitted and which the court entered judgment on. We then have on appeal here basically three areas that the plaintiff wishes to talk about. One of them is the so-called moisture problem. The evidence in the trial established that the windows, or I should say there was no evidence the windows were installed improperly. The focus seemed to be on the ductwork and whether it needed to be insulated or not. Clearly the SPACs didn't call for insulated ductwork. Even the expert called by the plaintiff indicated that not all ductwork is insulated. There is a provision in the contract that if you want additional work or require additional work, that that additional work gets billed and agreed to at the time that it's performed. What was the amount of money that the plaintiff is now asking for? The plaintiff in that area, I'm sorry I don't have it in front of me, but it was the amount shown by Mr. Freeman's estimate, which I don't have in front of me. He's asking for that, but I need to talk about that amount, because the ductwork was not required under the contract to be insulated. No one's in dispute on that. The repair that was done by Mr. Freeman in an effort to cure what he saw as a moisture problem, which initially the plaintiff was talking about the windows being improperly installed. But that was repaired by him trying several things in the basement. And his estimate included not only insulating the main trunk of the basement, which was specifically not in the contract, but also blocking vents in the crawl space, which were installed according to code and which was admitted by this expert. And in addition to that, he also put in a vapor barrier. Well, there was already a vapor barrier there, and in order to make his vapor barrier work, he had to go around punching tens or hundreds of holes in the existing vapor barrier so they wouldn't trap the water. And he admitted that he didn't know which of those things were responsible for curing a moisture problem, which he saw. And the plaintiff's estimate includes all those things kind of lumped together here. So in fact, I believe the testimony was that he wasn't even sure that the moisture problem had been cured, but he was informed of that at the time of the trial. Was this a design build? This was a contract where plans were drawn up for the home. It was either taken from, and excuse me because it's been a while, it was either taken or modified from something that was suggested by a plaintiff or some kind of collaboration. Well, my question is about the moisture in the basement, and you made a comment that the contract didn't call for the insulation of the ductwork in the basement. Correct. Okay, I buy that. But who designed the scope of the work, I'll say, who designed the scope of the work for the ductwork and should not? Certainly Mr. Kirk came up with plans which were approved by the plaintiff, whether it was from his design or not. The plaintiff didn't design the home, though, did he? No. My only question, and I can't recall, is whether or not. It would strike me as being somewhat strange if the plaintiff had any particular expertise in insulation ductwork. And I'm not saying he designed it. I just don't know whether he brought something to the table that was modified or whether it was created by a collaboration or not. I'm not sure. But in this particular case, there was also evidence that moisture in the house can be caused by a variety of things, including the fact that you use materials to construct a house which let moisture go after the build for a period of time. And you also don't have any control over someone who has blinds on their windows and chooses to close them, then open them and sees condensation there because we have a difference between the heat in the room and the heat outside. So the cause of the moisture problem is not clear. It was acknowledged that there was moisture in the home. Well, did the vapor barrier, well, let's forget the vapor barrier. Did the insulation of the ductwork, did that? By the homeowner's testimony, he said that what Mr. Freeman did, which included three different things, there is no longer a moisture problem. What was, whether that would have occurred without it, who knows. Mr. Freeman didn't know that what he did cured it. It was his suggestion. And at least one of the things that he did violates the building codes, and he freely admitted that. Also, putting a second vapor barrier in, he had to admit that when he was putting it in, he found the other vapor barrier and had to punch all sorts of holes in it. Otherwise, the vapor barrier wouldn't have functioned. So we're not exactly sure how that breaks down in terms of whether it was the actual cure, whether part of it was the cure. And the burden is always on the plaintiff to prove his case and his damages. We are not, as plaintiff indicated, dealing with an implied warranty of habitability. That's not what he said. He said, we didn't perform our contract, which is the plans, specifications, and building, in a workmanlike manner. And I believe the evidence shows that we did, whether it's under Count 1, Count 2, or Count 3. The allegation of breach is the same in each of those cases. I would also point out that even if we're talking about a good and workmanlike manner breach, the period of the warranty and the period for that was shown under Article 11, which is one year. I would argue that that would also limit the implied warranty of workmanship. Again, we're not talking about the implied warranty of habitability. And the Tassin case explicitly dealt with whether you could take a one-year warranty and the express warranty void any extended implied warranty. And that deals with patent or latent defects. The bargain period was a year. So I think the court could affirm the decision that was made by the trial court. I've cited one or two cases where if there's another ground or reason, the court can use that to affirm. The next thing we have is there's a discussion of swirls in the garage itself. Meaning that apparently the finishing left some marks in an area in the garage that are swirl-type marks. It's clear from the evidence that it wasn't structural. It didn't create a use problem. It wasn't even measured by Mr. Roach, who was the expert that they used on that issue. So under those circumstances, the issue is whether that complies with good and workmanlike protection. I guess what I would say is you build a house and you have a wall. And it's supposed to be plumb and level. And it's out by a little bit. Perfection is not what good and workmanlike refers to. There's no indication here that it was a trip hazard. It might have caught some dust in the garage. But it was still fully functional and it was in the garage. In the case of the concrete, one of the reasons that you don't warrant concrete is because all concrete cracks. And I think the testimony indicated that. Concrete does crack. You don't have control of that. You also don't have control over the mix. He gives the warranties from the manufacturers in this case, but he's saying he's excluding concrete work. This problem obviously wasn't there initially because the punch list didn't include it. Mr. Roach comes out the first time and doesn't note any problem with it. And then comes out a year later and sees a problem with it. Which is approaching the two-year mark, I think is what the plaintiff indicated. And because you don't have control over... There are a variety of things that can happen. You can have too much water in the mix. You can have over-finishing or under-finishing. And the testimony on that went several different ways. But you can also have someone that puts chemicals on the driveway. And you have no control whatsoever over that. That's the reason for the exclusion here. So I believe the court can affirm the trial court in this case. Whether or not the trial court dismisses counts one and three. The proof is all the same. Based on the proof, the court can affirm the trial court. If the court is not prepared to do that, then we would have several issues that would require this to go back on remand potentially. And that is... The trial court, as the finder of fact, would have to determine whether the garage floor and the swirls were acceptable under the circumstances or not. And then, therefore, whether those damages would be applicable to this case. Or the damages claimed would be applicable, which includes stenciling, epoxy, and grinding. As to the garage floor. With respect to the outside on the driveway itself, the trier of fact would have to consider whether the spalling was actually caused by a breach of the contract. And that's the function of the trier of fact. And then, finally, we have the issue of damages. And we've already alluded to some of that because the fix by Mr. Freeman involved several things that may not, and I argue should not, be included in the cost of remedying any problem which the trier of fact finds was a result of a breach of this contract under whatever account. And specifically, the cost of blocking vents which were required by code and installed in accordance with code. As well as putting a new vapor barrier in where there was already a vapor barrier in. And he acknowledged that he didn't know that those things were necessary. And then on the cost of repair of the drive, Mr. Roach testified to what he would do, which would be involved cleaning it off, grinding it, epoxying it, and then putting a pattern on it as a decorative aesthetic matter. He didn't say what the actual cost of removing and replacing the drive was. And the only testimony on that issue came from the defendant who indicated that cost was $5,400 as opposed to the several thousand more that Mr. Roach was proposing. So for those reasons, if the court doesn't affirm the decision, I feel that it should be remanded back to deal with those specific issues by the trier of fact in this case. If there are no further questions. Thank you. Thank you. A couple of things I want to point out. First of all, the facts in this case aren't going to change. This is not a case where there's any question as to the credibility of witnesses. There were only two independent people within the construction industry that were called. They were called by me. They were not hired by me. They were called as people who had looked at the situation at the Evans home and gave their best opinion as to what the problems were and how they could be solved. The facts aren't going to change. The facts in this case are within the... I believe there were Exhibits 1 through 32, but in all there were 24 exhibits actually admitted in evidence,  Those photographs aren't going to change. All one has to do is look at the photographs to determine what condition the house was in at various stages. Winter of 08, 09, winter of 09, 10, spring of 10, and I think even the spring of 11. That's not going to change. So I guess I'm kind of concerned that this would go back to the trial court merely because the evidence is there, the facts are there, there's nothing left for the trial court to do. There is no statement within any of his orders or during the play we had during my motion for reconsideration that he disbelieved any of the witnesses. Two witnesses were called. Two witnesses were unrebutted in terms of there being problems in the moisture problem and in the driveway and in the garage. Secondly, I want to talk about the fact that all this stuff about how you can't guarantee concrete or warranty concrete because it cracks. Yes, concrete cracks, but the surface does not simply chip away into nothing unless something's been done wrong. And in this instance, the opinion testimony by Mr. Roach, who does nothing but concrete work and concrete finishing, was in the finishing, was in the work product of the contractor. He's the one that messed up. Mr. Roach says, we don't have to replace the concrete. You know, the base is solid, that's good. What we need to do is redo the surface. So it's the finishing work that was messed up. It's not the concrete. It's not the product. It's the workmanship that was messed up. That's been glossed over. And there was no evidence either way on that thing. The evidence was clearly that there was a problem there. Third thing I want to mention is that are aesthetics totally unimportant when you're paying someone $160,000 to build a home, plus buy the lot from them? Are aesthetics nothing? They mean nothing? So you can have a garage floor that has these swirling patterns all around there and because somebody doesn't trip on them, that's okay? I don't know if that's, to me, I don't think that's the standard. Was the workmanship defective? It was. Could it be redone? Yes. Could Mr. Kirk done it? Sure he could have. He had plenty of opportunities to do it. But his first statement was, oh no, that's acceptable. That's acceptable. And he walked away. That was all he said about the garage floor. Mr. Wilcox made reference to the so-called moisture problem. Come on. You know, there's at least 50 pictures. And there's no question that there was a moisture problem. It's not moisture. It's freezing on the inside of a brand new house with water actually dripping inside onto the floor. It's not a moisture problem. That's more than a moisture problem. We don't know what else to call it, so we call it a moisture problem. But it's far from a so-called moisture problem. I want, for your benefit, Justice McCullough, I want to give you the figures. For the moisture problem, having taken out those items that had nothing to do with the moisture problem that were solved by Mr. Freeman, we are asking for the amount of $2,265.32. That's specifically stated in my brief. And that's taking out from his bill which was paid for work unrelated to the moisture problem. With respect to the garage floor, the only estimate we have of work that needs to be done, and also let's take into consideration those photographs also show the spalling and the chipping away of concrete within the garage floor itself. In order to redo that work, Mr. Roach estimated it at $4,968. For the driveway, he estimated that the work would be $7,500. He was asked by Mr. Wilcox, well, but that includes the stenciling and this little extra stuff. He says, yes. He says, well, how much is the purchase price of that? He says, no more than $500. That leaves us with $7,000. Then I asked Mr. Roach, well, would there be an adjustment on your purchase price based upon when you made this quote and the time that it was done? He said it would probably rise 4% to 6% per year. So if we take the $7,000 and we simply add 4% for one year, that brings the amount to $7,280. Hence, I don't know where my math comes in, but if you add those two together, you're somewhere around $12,500 for the garage and the driveway. The last comment I want to make is that Mr. Wilcox would have us believe that a person contracting with a contractor is somehow responsible and bound by the plans and specs which are for the contractor for the purpose of building a good house. That's not what the warranties are all about. The warranties are about workmanship because there's this inability between the two. So who is to bear the responsibility when that workmanship shows up as defects in the house? We believe it's in the hands of the contractor. Again, I would answer any questions if you have them. If not, thank you very much. I don't think so. Thank you. Thank you. Let's stand and recess until the readiness of the next case.